United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DURVALINO SARMENTO,

Plaintiff,

v.

NEWREZ LLC,

Defendant.

Case No. 26-cv-05599-PCP

**ORDER TO SHOW CAUSE**

Under both the California Rules of Professional Conduct and the local rules, attorneys have a duty of candor to the Court. *See* Cal. R. Prof. Conduct 3.3(a)(1); Civ. L.R. 11-4(4). That duty is perhaps most crucial when an attorney seeks emergency *ex parte* relief on a client's behalf. As a court in the Central District of California explained more than thirty years ago:

> When an ex parte motion is filed, … [t]he judge drops everything …. It is assumed that the tomatoes are about to spoil or the yacht is about to leave the jurisdiction and that all will be lost unless immediate action is taken. Other litigants are relegated to a secondary priority. The judge stops processing other motions. Even hearings or trials—where a courtroom full of deserving users of the court are waiting—are often interrupted or delayed.
>
> It is rare that a lawyer's credibility is more on the line, more vulnerable, than when he or she has created this kind of interruption. Lawyers must understand that filing an ex parte motion … is the forensic equivalent of standing in a crowded theater and shouting, "Fire!" There had better be a fire.

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 491–92 (C.D. Cal. 1995)

In this case, plaintiff's counsel—Sarah Shapero—led the Court to believe that there was a fire. On June 15, 2026, Shapero filed an *ex parte* application for a temporary restraining order (TRO) on behalf of her client, Durvalino Sarmento, seeking to enjoin his mortgage-loan servicer Newrez LLC from conducting a foreclosure sale of his home. Shapero argued in the application

United States District Court
Northern District of California

that Newrez planned to sell Sarmento's home on the morning of June 17, 2026. And she asserted that the imminent sale would violate California Civil Code § 2923.6(c), which generally prohibits mortgage servicers from conducting foreclosure sales while a homeowner has a complete loan-modification application pending. In Shapero's telling, Sarmento had submitted a complete loan-modification application more than a week earlier, but Newrez had neither evaluated the application nor rescheduled the sale. The motion said nothing to indicate whether or not Sarmento had filed previous loan-modification applications.

Shapero waited several days after filing the complaint to submit the TRO application, but the Court had no such luxury. Upon receipt of the application, with less than 48 hours until the purported sale, the Court dropped everything. Based on Shapero's representations that Newrez planned to proceed with sale, and the application's silence as to prior loan-modification applications, the Court granted the application the day after it was filed, temporarily restraining Newrez from selling Sarmento's home. The Court noted, however, that Sarmento's ultimate success on the merits of his claim might turn on whether the pending loan-modification application was his first. That is because, under California Civil Code § 2923.6(g), a mortgage servicer has no obligation to evaluate a new application if a homeowner's financial circumstances have not materially changed since the last time they received a fair opportunity to be evaluated.

It has now become clear that there was no fire. After the Court ordered Newrez to show cause why a preliminary injunction should not follow the TRO, Newrez produced evidence that discredits the factual bases for emergency relief requested by Shapero and granted by the Court. Contrary to Shapero's representation, Newrez had not planned to proceed with the June 17, 2026, foreclosure sale after Sarmento filed his loan-modification application. On June 8, 2026, before Shapero had even filed the complaint in this action, Newrez sent a letter to Sarmento stating that "[t]he completion of your application has granted your protection from foreclosure while we evaluate the application." Dkt. No. 21-18, at 1. And on June 15, 2026, the same day that Shapero filed the TRO application in this Court, Newrez rescheduled the foreclosure sale from June 17 to July 29, 2026. *See* Dkt. No. 21 ¶ 13. Shapero did not bring this to the Court's attention in the time between the filing of her TRO application and the Court's issuance of a TRO.

In short, the evidence before the Court suggests that Newrez had complied with the requirements of § 2923.6 without judicial intervention and continues to do so: It recently rescheduled the sale again to ensure that Sarmento has time to appeal the denial of his loan-modification application. *See* Cal. Civ. Code § 2923.6(e)(2) (requiring as much).

Even if Shapero had a reasonable basis for representing that the foreclosure sale remained imminent, it is not clear that she had a strong basis to argue that the sale would be unlawful. As the evidence Newrez produced in response to the Court's order to show cause establishes, Sarmento previously filed four loan-modification applications with Newrez's predecessors from 2010 to 2016 and has filed three loss-mitigation applications with Newrez since 2021. *See* Dkt. No. 21 ¶¶ 5, 9. Unless Sarmento's financial circumstances have materially changed since his last attempt to modify his loan, which was just last year, Newrez has no statutory obligation to delay the sale of his home pending his new application. *See* Cal. Civ. Code § 2923.6(g). Shapero undoubtedly knew that such past applications might preclude relief—other courts have explained as much in cases Shapero previously litigated, including against Newrez. *See Carrillo v. Newrez LLC*, No. 2:23-CV-01140, 2024 WL 6846239, at *4 (C.D. Cal. Jan. 17, 2024); *Carrillo v. Wells Fargo Bank, N.A.*, No. 22-CV-3985, 2023 WL 5444333, at *8–9 (C.D. Cal. Mar. 7, 2023); *Park v. Ocwen Loan Servicing, LLC*, No. 15-CV-03400-EDL, 2017 WL 11682614, at *8–9 (N.D. Cal. May 10, 2017). Yet she omitted mention of the past applications in the TRO application, exploiting the Court's need to rule on the application quickly and based on her representations alone.

In the reply she filed in support of the *ex parte* application, Shapero asserted that "there was no indicated [*sic*] that the sale would be postponed" at the time she filed the *ex parte* motion "despite [Newrez]'s assertions to the contrary." But that assertion came only in her brief—neither she nor Sarmento were willing to state as much in a sworn declaration. And the reply authored by Shapero did not address (or even acknowledge) Newrez's evidence of Sarmento's half-dozen prior loan-modification applications. Shapero then failed to appear at the preliminary-injunction hearing.

Shapero's conduct in this action appears to fall far below the standards expected of

United States District Court
Northern District of California

attorneys appearing before this Court. The apparent misrepresentations and material omissions in her filings appear to be the result either of a lack of candor or a failure to conduct a reasonable investigation of the relevant facts and law. And Shapero's failure to appear at the preliminary-injunction hearing wasted the time and resources of the Court, the Court's staff, and opposing counsel.

For the foregoing reasons, Shapero is ORDERED TO SHOW CAUSE why she should not be sanctioned for the above-described conduct by being required to pay the reasonable attorney fees and costs incurred by Newrez in connection with the TRO motion. Shapero shall respond to this order in a written statement not to exceed 5 pages by no later than August 13, 2026.

**IT IS SO ORDERED.**

Dated: July 31, 2026

P. Casey Pitts
United States District Judge